UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ILHAM M.[1],

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

Civil Action No. 24-13301

David R. Grand
United States Magistrate Judge[2]

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 15)

Plaintiff Ilham M. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of defendant Commissioner of Social Security ("Commissioner") that she was overpaid Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions. (ECF Nos. 14, 15).

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff was overpaid SSI in the amount of $368.23, and that she did not qualify for a waiver of the overpayment. Thus, the Commissioner's Motion for Summary Judgment **(ECF No. 15)** will be **GRANTED**;

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 20).

Plaintiff's Motion for Summary Judgment **(ECF No. 14)** will be **DENIED**; and, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision will be **AFFIRMED**.

### A.      Background and Procedural History[3]

Plaintiff began receiving SSI as of July 2013.  (PageID.82-88).  At the time she applied for benefits, and again at the time her benefits were approved, the Social Security Administration ("SSA") advised Plaintiff of her obligation to report changes in her income and resources.  (PageID.85-86, 224).  Specifically, SSA informed Plaintiff that she must report income changes, including when the "amount of money (or checks or any other type of payment) she receives from someone or someplace goes up or down or she starts to receive money (or checks or any other type of payment)."  (PageID.224).  SSA's notice also informed Plaintiff that she must report when the "value of her resources goes over $2,000 when you add them all together …."  (*Id.*).  Plaintiff's Notice of Award reminded her of her reporting obligations and included a fact sheet explaining how SSA counts income and resources.  (PageID.84-100).  SSA paid Plaintiff's benefits to her daughter, who served as her representative payee.[4]

On August 19, 2023, SSA notified Plaintiff that she had been overpaid $3,047.47 during certain months between March 2021 and December 2022 for various reasons.  (PageID.128-32).  The notice further advised Plaintiff of her right to: (1) appeal the

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 9-1.

[4] A representative payee serves in a fiduciary role and is responsible for using the benefit funds in the beneficiary's interest.  *See* 20 C.F.R. § 416.635(a).

2

determination of overpayment; or (2) request a waiver of the overpayment. (*Id.*). In order to obtain a waiver, SSA informed Plaintiff that she would have to demonstrate that the overpayment was not her fault and that she could not pay her bills "for food, clothing, housing or medical care, or it would be unfair for some other reason" if SSA recovered the overpayment. (PageID.129).

Plaintiff opted to pursue a waiver of the overpayment and filed her waiver request on September 8, 2023. (PageID.227-40). She asserted that recovery of the overpayment would be unfair because her "daughter deposit[ed] money into [her] account[.]" (PageID.229). On September 28, 2023, SSA notified Plaintiff that it had reduced the overpayment amount to $2,619.21, after waiving the portion attributable to Economic Impact Payments Plaintiff received in 2021. (PageID.243-45).

Just a few days later, on October 5, 2023, SSA waived an additional portion of the overpayment, leaving a balance of $1,762.69. (PageID.247-50). In the months for which SSA did not waive recovery, the overpayment was caused by: (1) excess resources in a joint bank account that Plaintiff shared with her daughter, who was also her representative payee; (2) income in the form of gambling winnings (from a lottery) that Plaintiff had not timely reported; and (3) an absence from the United States for more than 30 days that Plaintiff had not timely reported. (PageID.248).

Thereafter, Plaintiff filed a timely request for an administrative hearing, which was held on June 13, 2024, before ALJ Jennifer Smiley. (PageID.37-60). On June 28, 2024, the ALJ issued a partially favorable written decision, granting in part and denying in part Plaintiff's request to waive recovery of the overpayment. (PageID.26-33). Specifically,

3

the ALJ found that Plaintiff remained liable only for the $368.23 she was overpaid in August 2021 as a result of the gambling winnings.[5] (*Id.*). The Appeals Council denied review of the ALJ's decision on September 25, 2024. (PageID.16-20). Plaintiff timely filed for judicial review of the final decision on October 21, 2024.[6] (ECF No. 1).

### B. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only –

---

[5] The ALJ found that Plaintiff's representative payee was also at fault for this portion of the overpayment, as well as the portion caused by excess funds in a joint banking account. (PageID.26-33).

[6] Plaintiff initially filed her complaint in the United States District Court for the District of Columbia. (ECF No. 1). On December 11, 2024, Plaintiff's case was transferred to this Court. (*Id.*).

4

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

  **C.** **Framework for Determining Waiver of Recovery of SSI Overpayments**

Under the Act, "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security …." 42 U.S.C. § 404(a)(1). 42 U.S.C. § 404(b)(1)

5

provides an exception to this rule of recovery for "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." Thus, in order to obtain a waiver of an overpayment, a claimant must establish that she is without fault and meets one of three additional criteria: adjustment or recovery would defeat the purpose of the Act, would be against equity and good conscience, or would impede efficient or effective administration of the Act due to the small amount involved. *See* 20 C.F.R. § 416.550. In this case, the ALJ denied waiver of the gambling winnings overpayment because Plaintiff did not meet the "without fault" criterion.

The applicable regulations provide that when an individual fails to "furnish information which the individual knew or should have known was material," he or she will be found at fault. 20 C.F.R. § 416.552. When determining whether an individual is without fault, SSA will consider "all the pertinent circumstances surrounding the overpayment in the particular case," including:

> … the individual's understanding of the reporting requirements, the agreement to report events affecting payments, knowledge of the occurrence of events that should have been reported, efforts to comply with the reporting requirements, opportunities to comply with the reporting requirements, understanding of the obligation to return checks which were not due, and ability to comply with the reporting requirements (e.g., age, comprehension, memory, physical and mental condition).

*Id.* In evaluating these factors, the Commissioner considers all pertinent circumstances, including "any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have." *Id.*

6

**D.     Analysis**

   *1.     The Court Could Find Plaintiff's Arguments Waived*

In the February 14, 2025 letter Plaintiff initially filed in response to this Court's briefing order, Plaintiff simply asked that the Court waive her overpayment balance because she is "disabled and sick with cancer." (ECF No. 11, PageID.291). However, as set forth above, waiver is only available when the overpaid individual is without fault and meets additional criteria.[7] *See* 20 C.F.R. § 416.550; *see also Cohan v. Comm'r of Soc. Sec.*, 802 F. App'x 886, 892 (6th Cir. 2020) (recognizing that individuals who are "at fault" cannot have an overpayment waived). While the Court is sensitive to Plaintiff's condition, as discussed above, the ALJ explicitly found that she was at fault for the overpayment attributable to her gambling winnings, and nothing in Plaintiff's brief suggests that the ALJ's determination was based on an improper consideration of the § 416.552 factors listed above. (PageID.30-32). Indeed, the Court could find that she waived any claim of error by not presenting any developed argument on this point. *See, e.g., Jenkins v. Comm'r of Soc. Sec.*, No. 23-1036, 2023 WL 9231492, at *2 (6th Cir. Oct. 5, 2023) (finding *pro se* appellant forfeited appellate review, in part, by submitting a "skeletal appellate brief" that was "inadequate to preserve any issue for appellate review"); *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("issues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived")

---

[7] The record indicates that Plaintiff has already received the remedy that is available to most overpaid individuals whether at fault or not. Specifically, Plaintiff exercised her right under 20 C.F.R. § 416.571 to request that any recovery be conducted at a lower rate, and the agency agreed to recover her overpayments at a rate of $10 per month. (PageID.142).

7

(internal quotation marks omitted).

The same can be said regarding the argument Plaintiff makes in her revised brief, dated April 22, 2025. In that filing, Plaintiff asserts, in conclusory fashion, that "[t]here is no evidence indicating [she] intentionally misrepresented or failed to report information that led to the overpayment" and that "[s]he acted in good faith." (ECF No. 14, PageID.300). This being the extent of her argument on the issue of fault, the Court could again find that she waived any claim of error as to the issue. *See Jenkins*, 2023 WL 9231492, at *2; *Kennedy*, 87 F. App'x at 466.

> 2. *The ALJ's Findings Regarding Waiver of Overpayment Due to Gambling Winnings are Supported by Substantial Evidence*

Assuming that Plaintiff's arguments are not deemed waived, the ALJ's findings regarding the gambling winnings at issue are supported by substantial evidence.

> (a) The Finding that the Winnings Created an Overpayment

An individual's countable income will ordinarily reduce the amount of SSA benefits that the individual receives. *See* 20 C.F.R. § 416.1100. An individual's monthly SSI payment is computed by reducing the maximum benefit rate by the amount of countable income. *See* 20 C.F.R. § 416.420. The federal maximum payable monthly amount for an individual was $794 in 2021 and $841 in 2022. SSA, SSI Federal Payment Amounts, https://www.ssa.gov/oact/cola/SSIamts.html (last accessed January 26, 2026). Income is defined as "anything that you receive in cash or in-kind that you can use to meet your needs for food or shelter." 20 C.F.R. § 416.1102. Gambling winnings, which include lottery winnings, are considered unearned income. *See* 20 C.F.R. § 416.1121(f); Program

Operations Manual System (POMS) SI 00830.525, available at https://secure.ssa.gov/poms.nsf/lnx/0500830525 (last accessed January 26, 2026). Therefore, if Plaintiff's countable income for the month in which she received the lottery payout exceeded the maximum benefit rate, she was not entitled to payment of a benefit for the month in which they counted.

As discussed by the ALJ, Plaintiff had $3,000 in winnings from the California State Lottery in August 2021, which were reported to the Internal Revenue Service as having been paid to Plaintiff. (PageID.30, 273). The ALJ considered Plaintiff's testimony that one of her daughters actually purchased the ticket but claimed the winnings using Plaintiff's passport because she "had lost her own ID." (PageID.30, 52). However, the ALJ found it significant that Plaintiff had previously acknowledged to the agency that these winnings were hers. (PageID.30, 271). The ALJ then reasonably determined that Plaintiff had unearned income of $3,000 from gambling winnings in August 2021; that she was not eligible for payment of any benefit for that month; and that therefore, the $368.23 she received represented an overpayment. (PageID.30, 108, 131).

Substantial evidence supports the ALJ's conclusion that the overpayment occurred. While there is some evidence to the contrary, it is contradictory and not particularly persuasive. For example, when Plaintiff was first questioned about these gambling winnings in December 2022, she reported that her daughter – who also served as her representative payee – received those winnings using Plaintiff's ID. (PageID.275). The representative payee was present during this interview at an SSA field office; however, she "refused to respond directly" when asked about the gambling winnings. (*Id.*). Moreover,

9

during this interview, Plaintiff became "agitated" and "irate" and had to be escorted off the premises by security after calling the field office employee "expletives." (*Id.*). Several months later, in September 2023, Plaintiff somewhat contradictorily told an SSA employee that her daughter/representative payee won the money at a "casino," rather than on a "lottery" ticket. (PageID.279). Finally, at the administrative hearing, Plaintiff's representative payee testified that it was *her sister* – not her – who won the lottery prize. (PageID.58). The ALJ could reasonably decline to credit testimony that was inconsistent with previous representations. *See, e.g., Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 556-57 (6th Cir. 2016) (ALJ could reasonably consider "inconsistent statements").

Moreover, even if this evidence was persuasive, it does not render the ALJ's determination unsupported by substantial evidence. *See Preston v. Comm'r of Soc. Sec.*, No. 22-4026, 2023 WL 4080104, at *3 (6th Cir. June 20, 2023) ("The existence of potentially conflicting evidence is immaterial so long as substantial evidence supports an ALJ's determination."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400 (6th Cir. 2018) ("But on review, it is not for us to decide if there was evidence in favor of [the plaintiff's] position. The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. We decide only whether there was substantial evidence to support the ALJ's decision.") (internal quotation marks and citations omitted). Here, substantial evidence supports the ALJ's determination that the gambling winnings belonged to Plaintiff, as she acknowledged to the agency that these winnings were hers, reported them as income to the IRS, and they were deposited into her bank account. (PageID.271, 273). Given such a

determination, Plaintiff had too much unearned income in August 2021 to qualify for the $368.23 payment she received. (PageID.30).

(b) The ALJ's Finding of Fault

The ALJ then turned to the issue of whether Plaintiff was at fault in creating the gambling winnings overpayment. (PageID.31). The ALJ considered that Plaintiff had failed to timely report the receipt of gambling winnings and only disclosed their existence when she presented to an SSA field office for other reasons and was questioned about them. (PageID.31, 275). The ALJ concluded that Plaintiff knew or should have known that she needed to report this income to SSA. (PageID.31). The ALJ's conclusion is supported by record evidence confirming that Plaintiff was notified of her obligation to report income – including any instance in which she "starts to receive money" from "someone or someplace" – at the time she applied for benefits. (PageID.224). Plaintiff also was reminded of her obligation to report income at the time her benefits were approved. (PageID.85-86). Given these facts, the ALJ reasonably determined that Plaintiff was at fault in creating the gambling winnings overpayment, and thus, it could not be waived. (PageID.31-32).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence, and it will therefore be affirmed.[8]

---

[8] In his motion for summary judgment, the Commissioner points out that any other overpayments are not properly before this Court. (ECF No. 15, PageID.316-20). Plaintiff has not disputed the Commissioner's position in this regard, and the Court finds it to be correct. Thus, the Court need not address those issues further.

11

### E.     Conclusion

For the foregoing reasons, the Court **GRANTS** the Commissioner's Motion for Summary Judgment **(ECF No. 15)**; **DENIES** Plaintiff's Motion for Summary Judgment **(ECF No. 14)**;[9] and, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMS** the ALJ's decision.

**IT IS SO ORDERED.**

Dated: January 26, 2026            s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                  United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2026.

                                  s/Eddrey O. Butts
                                  EDDREY O. BUTTS
                                  Case Manager

---

[9] Prior to filing her motion for summary judgment, and indeed even prior to the filing of the transcript in this matter, Plaintiff filed a motion to waive the overpayment at issue. (ECF No. 3). In that motion, Plaintiff asks that her overpayment be waived because she is "very sick" and has "colon cancer and another medical problem." (*Id.*). Although the Court is sympathetic to Plaintiff's medical conditions, because Plaintiff's Motion to Waive Overpayment **(ECF No. 3)** does not alter the Court's legal analysis, **IT IS HEREBY DENIED**.